UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANDREW BREWER,

    Petitioner,

v.                                                        CASE NO. 6:09-cv-2041-Orl-36KRS

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

    Respondents.

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. § 2254. Upon consideration of the amended petition (Doc. No. 20), the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the petition for writ of habeas corpus (Doc. No. 28). Petitioner filed a reply to the response (Doc. No. 34).

Petitioner alleges eight claims for relief. For the following reasons, the petition is denied.

*I.    Procedural History*

Petitioner was charged by indictment with first degree murder (count one) and burglary of a dwelling with a firearm (count two). Pursuant to a written plea agreement, Petitioner entered a plea of guilty to second degree murder and burglary of a dwelling with a firearm. The court sentenced Petitioner to concurrent terms of life in prison.

Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. The state court denied the motion. Petitioner appealed, and the Fifth District Court of Appeal of Florida affirmed *per curiam*.

Petitioner subsequently filed a petition for belated appeal from his convictions and sentences. The petition was granted, and the Fifth District Court of Appeal affirmed Petitioner's convictions and sentences *per curiam*.

## II.   Legal Standards

### A.   Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh

Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B.     *Standard for Ineffective Assistance of Counsel*

The Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1] *Id.* at

---

[1] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome

687-88. The prejudice requirement of the *Strickland* inquiry is modified when the claim is a challenge to a guilty plea based on ineffective assistance. *See Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To satisfy the prejudice requirement in such claims, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir.1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the

---

determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III.   Analysis

#### A.   Claim One

Petitioner asserts that counsel rendered ineffective assistance by improperly advising him regarding the consequences of his guilty plea, thereby making his plea involuntary. Specifically, Petitioner maintains that counsel improperly advised him that the trial judge agreed to a maximum sentence of thirty-seven years.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (App. E at 393-94.) The state court reasoned that the claim was refuted by the record. *Id*. The court noted that the plea agreement indicated that Petitioner could be sentenced from twenty-five years to life in prison and that the court made no representations regarding the sentence other than the terms contained in the plea agreement or made in open court. *Id*. The state court further noted that at the plea hearing, in Petitioner's presence, counsel stated the terms of the plea agreement and said there were no promises as to the sentence and that the State was free to argue for a life sentence. *Id.* The state court reasoned that Petitioner acknowledged that he had read and understood the plea agreement and knowingly and voluntarily entered a plea of guilty. *Id.*

The state court's denial of this claim is supported by the record. The plea agreement provided that the sentencing range to which Petitioner was subject was twenty-five years to life in prison and that the judge would determine the appropriate sentence. (App. C at

369.) The agreement further provided that the trial judge was not bound to follow any sentencing recommendations made by the prosecutor and that the judge had made no promises regarding the sentence other than those contained in the agreement or stated in open court. *Id.* Moreover, before the trial court accepted Petitioner's plea, defense counsel noted the terms of the plea agreement, which included a maximum life sentence, and indicated there was no promise from the judge concerning the sentence that would be imposed. (App. C at 375-76.) Defense counsel and the prosecutor further noted that the State was free under the terms of the agreement to seek a life sentence. *Id*. at 376-77. Thus, Petitioner clearly knew that he was subject to a maximum sentence of life, that there had been no promises by the judge to a sentencing cap of thirty-seven years, and that the prosecutor was permitted to seek a life sentence. Petitioner, therefore, has failed to demonstrate either deficient performance or prejudice. Accordingly, claim one is denied pursuant to Section 2254(d).

  B.  *Claim Two*

  Petitioner contends that counsel rendered ineffective assistance by failing to file a motion to withdraw the guilty plea. In support of this claim, Petitioner argues that the court imposed a sentence that did not comport with the plea represented to Petitioner by counsel. Petitioner maintains, therefore, that counsel should have moved to withdraw the plea based on Petitioner's involuntary entry of the plea.

  Petitioner raised this claim in his Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (App. E at 393-94.) The state court concluded that the record

refuted Petitioner's claim. *Id.* The court reasoned that the plea agreement did not encompass a thirty-seven year maximum sentence, and thus, counsel had no basis to move to withdraw the plea. *Id.*

Petitioner has not demonstrated that the state court's denial of this claim is contrary to, or an unreasonable application of, *Strickland*. As discussed *supra*, Petitioner was aware that the plea agreement provided for a maximum sentence of life in prison, that no promises had been made by the trial court regarding the sentence, and that the State reserved the right to seek a life sentence. Thus, no legal basis existed for counsel to move to withdraw the plea after Petitioner was sentenced to life in prison, nor would such a motion have been granted. Accordingly, claim two is denied pursuant to Section 2254(d).

### C.   *Claim Three*

Petitioner asserts that the State breached the plea agreement by advocating for a sentence of life in prison. Petitioner argues that the prosecutor never intended to abide by the terms of the plea agreement, and counsel was ineffective for failing to object to the State's violation of the plea agreement.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied relief. (App. E at 394.) The state court reasoned that the plea agreement included a maximum potential sentence of life in prison and the prosecutor noted at the plea hearing that the State reserved the right to advocate for a life sentence. *Id.* at 394-95.

The state court's denial of this claim is supported by the record. The plea agreement indicated that the prosecutor would not recommend "a number of years," but instead the

trial court would determine the appropriate sentence, which included a potential maximum sentence of life in prison. (App. C at 368.) At the plea hearing, defense counsel reiterated the terms of the plea agreement, including the potential maximum sentence Petitioner faced. Defense counsel and the prosecutor further noted that the State had the right to seek a life sentence. Thus, before Petitioner entered the plea, he was aware that the State intended to seek a life sentence and was permitted to do so under the terms of the plea agreement. Petitioner has not shown, therefore, that the State breached the plea agreement or that counsel was ineffective for failing to object on this basis. Accordingly, claim three is denied pursuant to Section 2254(d).

### D.     *Claim Four*

Petitioner asserts that his right to due process was violated based on the admission at the sentencing hearing of a stun gun, a rifle, books, and testimony by various witnesses. Petitioner maintains that the stun gun, rifle, and books were not relevant to the offenses. Petitioner further argues that the testimony of his teacher was irrelevant and had no bearing on his character and the testimony of Investigator Seymour was improper.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied the claim, reasoning that "'any relevant evidence as to a defendant's character or the circumstances of the crime is admissible at sentencing.'" (App. E at 396 (quoting *Stano v. State*, 473 So. 2d 1282, 1286 (Fla. 1985)).

One procedural requirement set forth in the AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted

all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-43 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B) (I) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), *holding modified by Martinez v. Ryan*, 132 S. Ct. 1309 (2012). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Id*. at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly

presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted). The Supreme Court of the United States has observed that "Congress surely meant that exhaustion be serious and meaningful." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). Furthermore, the Court explained:

> [c]omity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court. Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claims on the merits.

*Id*.; *see also Henderson v. Campbell*, 353 F.3d 880, 898 n.25 (11th Cir. 2003) ("Both the legal theory and the facts on which the federal claim rests must be substantially the same for it to be the substantial equivalent of the properly exhausted claim.").

Petitioner did not raise a federal due process violation in relation to his sentencing hearing in his Rule 3.850 motion. Instead, Petitioner maintained that his sentencing hearing was contrary to the Florida Rules of Criminal Procedure and Florida law. (App. B at 294-95.) Thus, claim four is unexhausted.

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional

violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Petitioner has neither alleged nor shown cause or prejudice that would excuse any procedural default. Likewise, he has not shown the applicability of the actual innocence exception. A review of the record reveals that Petitioner is unable to satisfy either of the exceptions to the procedural default bar. Therefore, claim four is procedurally barred from review.[2]

### E.   *Claim Five*

Petitioner contends that counsel rendered ineffective assistance by failing to object at the sentencing hearing to the admission of the stun gun, rifle, and books and to the testimony of Investigator Seymour. In support of this claim, Petitioner argues that Investigator Seymour's testimony regarding the circumstances of the offenses were irrelevant because he had pled guilty to the offenses. Petitioner further maintains that the stun gun, rifle, and books were not connected to the offenses.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (App. E at 396-97.) The state court noted that evidence was presented that the victim was tased with a stun gun like the one Petitioner hid after the

---

[2]Alternatively, the Court notes that claim four does not warrant habeas relief. The Eleventh Circuit has held "[q]uestions of pure state law do not raise issues of constitutional dimension for federal habeas corpus purposes. A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983) (citations omitted) (holding that state court's determination that trial court did not err in refusing to give a jury instruction based on construction of state statute did not warrant federal habeas review).

offenses. *Id.* The state court reasoned that even though the victim was killed with a .22 caliber firearm, "the fact that Defendant armed himself with a stun gun that could render his victim helpless and unable to defend herself prior to burglarizing her residence and then tried to hide the stun gun and an AK-47 before being questioned by investigators was significant to both the consequences of the crimes and to Defendant's character that the Court could consider when sentencing Defendant." *Id.* at 396. With respect to Investigator Seymour's testimony regarding the books found in Petitioner's room, the state court determined that the books and related testimony were relevant to Petitioner's character and propensity for violence, and thus, were admissible. *Id.* The state court further determined that although Investigator Seymour's personal opinion testimony was inadmissible victim impact evidence, Petitioner failed to demonstrate that he was prejudiced as a result of this testimony. *Id.* at 397-98.

Petitioner has not established that the state court's denial of this claim is contrary to, or an unreasonable application of, *Strickland.* Pursuant to Florida law, "any relevant evidence as to a defendant's character or the circumstances of the crime is admissible at sentencing." *Stano v. State*, 473 So. 2d 1282, 1286 (Fla. 1985) (citing *Buford v. State*, 403 So.2d 943 (Fla. 1981)). In the instant case, testimony was presented at the sentencing hearing indicating that the victim had injuries on her body consistent with a burn from a stun gun and that Petitioner hid a stun gun and an AK-47 before speaking to police. This evidence was relevant to the circumstances of the offenses and Petitioner's character. Likewise, Investigator Seymour testified that books concerning serial killers were found in

12

Petitioner's room. Such evidence was pertinent to Petitioner's character. Assuming that Investigator Seymour's testimony regarding his personal opinion of Petitioner was inadmissible, ample admissible evidence was presented regarding the circumstances of the offenses, Petitioner's character, and the impact of the victim's death on her family to warrant the sentences imposed by the trial judge. In sum, Petitioner has not demonstrated that counsel was deficient for failing to object to this evidence or that a reasonable probability exists that the outcome of the proceeding would have been different had counsel done so. Accordingly, claim five is denied pursuant to Section 2254(d).

### F. *Claim Six*

Petitioner asserts that the trial court committed fundamental error by sentencing him to life in prison based on his failure to further incriminate himself. Petitioner argues that he had a constitutional right not to be penalized for maintaining his innocence in relation to the use of a stun gun and his intentions for committing the offenses.

Petitioner raised this claim on his belated direct appeal. The Fifth District Court of Appeal of Florida affirmed *per curiam*.

The Supreme Court of the United States has held that "[b]y entering a guilty plea, a defendant waives constitutional rights that inhere in a criminal trial, including the right to trial by jury, the protection against self-incrimination, and the right to confront one's accusers." *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)). Petitioner entered a plea of guilty to the offenses in this case. Thus, he waived his right against self-incrimination. Moreover, assuming the trial court improperly

13

considered Petitioner's failure to admit he used a stun gun or to provide testimony regarding his motive for the offenses, sufficient evidence was presented from which the trial court could have determined that a life sentence was appropriate. Petitioner has not established that the denial of this claim is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, claim six is denied pursuant to Section 2254(d).

### G. Claim Seven

Petitioner maintains that the trial court erred by allowing the plea to stand after counsel objected to the sentences. In support of this claim, Petitioner argues that counsel's objection to the sentences demonstrated that the plea was not knowing or voluntary.

Petitioner raised this claim on direct appeal. The Fifth District Court of Appeal of Florida affirmed *per curiam*.

As discussed *supra*, Petitioner has not demonstrated that he was sentenced in violation of the plea agreement. Petitioner, therefore, has not established that his plea was involuntary. The trial court had no basis to vacate Petitioner's plea regardless of whether counsel objected to Petitioner's sentences. Accordingly, claim seven is denied pursuant to Section 2254(d).

### H. Claim Eight

Petitioner asserts that the court imposed vindictive sentences, which were harsher than the maximum sentences agreed to by the parties. Petitioner raised this claim in his belated direct appeal. The Fifth District Court of Florida affirmed *per curiam*.

Petitioner has not demonstrated that he was sentenced to harsher sentences than the

maximum sentences contemplated by the plea agreement. The maximum term of imprisonment to which Petitioner was subject under the plea agreement was life. The trial court, therefore, was permitted to sentence Petitioner to life in prison and did so after considering the evidence presented at the sentencing hearing. There is no indication that the trial court's sentences were imposed vindictively. Accordingly, claim eight is denied pursuant to Section 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV. Certificate of Appealability

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y Dep't. of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong. Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, the Court will deny Petitioner a certificate of appealability.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. The Amended Petition for Writ of Habeas Corpus (Doc. No. 20) filed by Andrew Brewer is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. Petitioner is **DENIED** a Certificate of Appealability.

3. The Clerk of the Court is directed to enter judgment accordingly and close this case.

**DONE AND ORDERED** at Orlando, Florida, this 10th day of June, 2013.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
OrlP-1 6/10
Counsel of Record
Andrew Brewer